**FILED**
**December 8, 2015**
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-15-00251-CV
7990386
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/25/2015 11:37:00 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00251-CV

---

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/25/2015 11:37:00 AM
JEFFREY D. KYLE
Clerk

---

FEMI S. ONABAJO AND CHRISTY ALFRED ONABAJO,
*Appellants*

v.

HOUSEHOLD FINANCE CORP. III,

*Appellee*

---

APPEAL FROM THE COUNTY COURT AT LAW NUMBER TWO OF
TRAVIS COUNTY, TEXAS
Trial Court Cause No. C-1-CV-14-010888

---

**BRIEF OF APPELLANTS**

---

Penny Y. Haye
Texas Bar No. 24030363
Law Office of Penny Haye
7703 North Lamar Blvd Suite 400
Austin, Texas 78752
Telephone: (512) 677-4293
Facsimile: (512) 777-4535
Penny_haye@sbcglobal.net

ATTORNEY FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

No. 03-15-00251-CV
IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

_____

FEMI S. ONABAJO AND CHRISTY ALFRED ONABAJO,
*Appellant*

v.

HOUSEHOLD FINANCE CORP. III,

*Appellee*

_____

APPEAL FROM THE COUNTY COURT AT LAW NUMBER TWO OF
TRAVIS COUNTY, TEXAS
Trial Court Cause No. C-1-CV-14-010888

---

**BRIEF OF APPELLANTS**

---

Penny Y. Haye
Texas Bar No. 24030363
Law Office of Penny Haye
7703 North Lamar Blvd Suite 400
Austin, Texas 78752
Telephone: (512) 677-4293
Facsimile: (512) 777-4535
Penny_haye@sbcglobal.net

ATTORNEY FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names and addresses of all counsel:

PARTIES
**Appellants/Defendants:**
FEMI S. ONABAJO AND CHRISTY ALFRED ONABAJO

**Counsel:**
PENNY Y. HAYE
Texas Bar No. 24030363
Law Office of Penny Haye
7703 N. Lamar Blvd. Suite 400
Austin, TX 78752
Telephone: 512.677.4293
Fax: 512.777.4535
Penny_haye@sbcglobal.net

**Appellee/Plaintiff:**
HOUSEHOLD FINANCE CORP. III

**Counsel:**
SARAH ROBBINS
Texas Bar No. 24074966
Hughs, Watters & Askanase, L.L.P.
Three Water Center
333 Clay, 29th floor
Houston, Texas 77002
Telephone: 713.328.1916
Fax: 713.759.6834
srobbins@hwa.com

ARTHUR TROILO, III
Texas Bar No.  20236010
TROILO LAW FIRM, P.C.
700 East 11th Street, Suite 300
Austin, Texas 78701
Telephone: (512) 391-9117

# TABLE OF CONTENTS

IDENTIES OF PARTIES AND COUNSEL ........................................................ 3

TABLE OF AUTHORITIES ....................................................... 5

STATEMENT OF THE CASE .................................................... 8

STATEMENT REGARDING ORAL ARGUMENT ............................................. 8

ISSUES PRESENTED…………………………………………………………… 8

STATEMENT OF FACTS .................................................. 9

ARGUMENTS:
    ISSUE 1:    The Trial Court lacked Jurisdiction…………………………… 14

    ISSUE 2:    Appellee's failure to comply with Texas Property Code §24.005………………………………………………………... 20

    ISSUE 3:    Applying Texas Civil Practice and Remedies Code Section 16.00(a) the two-year statute of limitations………………… 21

    ISSUE 4:    Applying Res judicata…………………………………………… 28

CERTIFICATE OF COMPLIANCE ................................................... 29

APPENDIX …………………………………….......................................... 30

# TABLE OF AUTHORITIES

**CASES**

*A Plus Investments, Inc. v. Rushton*, 2004 WL 868866, 2004 Tex. App. Lexis 3605 (Tex. App.—Ft. Worth 2004)…………………………………14, 16

*Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)…21

*Arquette v.Hancock* , 656 S.W.2d 627, 629 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.))………………………………………………………………...23

*Buttery v. Bush, 575 S.W.2d 144, 146 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.).* ……………………………………………………………………27

*Creditwatch, Inc.* v. *Jackson,* 157 S.W.3d 814, 816 n.8 (Tex. 2005)…………..23

*Coinmach Corp. v. Aspenwood Apartment Corp.,* 417 S.W.3d 909, 918 (Tex.2013) …………………………………………………………………21,24,25

*Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 202 (Tex.2011)…..21

*Federal Home Loan Mortg. Corp. v. Pham.,* 449 S.W.3d 230, 235–36 (Tex.App.–Houston [14th Dist.] 2014, no pet.)…………………………………….26

*Gideon* v. *Johns-Manville Sales Corp.,* 76 1 F.2d 1129, 1136-37 (5th Cir. 1985)…28

*Haith v. Drake,* 596 S.W.2d 194, 196 (Tex.Civ.App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.)………………………………………………………...14

*Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 567 (Tex. 2001)…21

*Ingersoll-Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 206 (Tex. 1999)..27

*Jaimes v. Federal Nat'l Mortg. Ass'n,* No. 03–13–00290–CV, 2013 WL 7809741 (Tex.App.–Austin Dec. 4, 2013, no pet.)…………………………………13

*Jones v. American Fed. Bank, F.S.B.,* No. 05–91–00634–CV, 1992 WL 32961, at *2 (Tex.App.—Dallas 1992, writ dism'd w.o.j.)…………………………………..13

*Jones v. Texaco, Inc.,* 945 F. Supp. 1037 – Dist. Court, SD (Texas 1996)…………23

*Krohn v. Marcus Cable Assocs., L.P.,* 201 S.W.3d 876, 881 (Tex. App. 2006)...24,25

*Leavings v. Mills,* 175 S.W.3d 301, 310 (Tex. App. -Houston [1" Dist.] 2004, no pet.)……………………………………………………………………..17

*McKinney v. Blakenship,* 282 S.W.2d 69,698 (Tex. 1955  )………………………27

*Massaad v. Wells Fargo Bank, Nat'l Ass'n,* No. 03-14-00202-CV, 2015 WL 410514, (Tex. App.-Austin Jan. 30, 2015, no pet.)…………………………………26

*Millet v. JP Morgan Chase, N.A.* , 20 12 WL 1029497 at \*3 (W.D. Tex.2012)…17

*Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858 (Tex. App. 1997)……………23

*Montenegro v. Wells Fargo Bank, N.A.*, No. 03-13-00123-CV, 2015 WL 3543055 (Tex. App. June 3, 2015)……………………………………………………...13, 26

*Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)………………..21

*Okorafor v. Uncle Sam & Assocs., Inc.,* 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)……………………………………………………20

*Onion Creek Luxury Apartments v. Powell*, No. 03-11-00008-CV, 2011 Tex. App. LEXIS 7261 (Tex. App. – Austin, Aug. 31, 2011, no pet.)………………..18

*Puentes v. Fannie Mae,* 350 S.W.3d 732, 739 (Tex. App. - El Paso 2011, pet. dism'd)……………………………………………………………………26,27

*Pustejovsky* v. *Rapid-American Corp.* v. *Pustejovsky,* 35 S.W.3d 643, 646 (Tex.2000)……………………………………………………………………28

*Roehrs v. Conesys, Inc.,*2005 U.S. Dist. LEXIS 33295, 2005 WL 3454015(N.D. Tex.Dec. 14, 2005)…………………………………………………… 24

*Reese v. Reese*, 672 S.W.2d 1, 2 (Tex. Civ. App.—Waco 1984, no writ)………..27

*Rogers* v. *Ardella Veigel Inter Vivos Trust, 162* S.W.3d 281, 290 (Tex. App.-Amarillo 2005, pet. denied)………………………………………………….22

*Rice v. Pinney,* 51 S.W.3d 705, 709 (Tex.App.–Dallas 2001, no pet.)…………..13

*Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). …………………………………………………………………………..15

*Tex. Dep't of Parks & Wildlife v.Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)….14

*Texas Employment Comm'n v. International Union of Elec., Radio and Mach.Workers, Local Union No. 782,* (1961)…………………………….. 14

*Two Pesos, Inc.* v. *Gulf Ins. Co.,* 901 S.W.2d 495, 500 (Tex. App.-- Houston [14th Dist.] 1995, no writ)…………………………………………………… 23

*Twyman v. Twyman*, 790 S.W.2d 819, 821 (Tex.App.-Austin 1990), rev'd on other grounds, 855 S.W.2d 619 (Tex.1993)…………………………………24

*W W Laubach Trust* v. *The Georgetown Corp.,* 80 S.W.3d 149, 159 (Tex. App.-Austin 2002, pet. denied)……………………………………………….25

*Ward v. Malone*, 115 S.W.3d 267, 269 (Tex. App.-Corpus Christi 2003, pet. denied)…………………………………………………………………..18

*Williams v. Bank of New York Mellon,* 315 S.W.3d 925, 926 (Tex.App.–Dallas 2010,

no pet.)…………………………………………………………………… 13

*Williams v. Garage Paix, Inc.*, 562 S.W.2d 534, 535 (TexCiv.App—Houston [14
   Dist.] 1978)……………………………………………………………. 22

**Texas Constitution**
Texas Constitution, Art. XVI §50(A)(6)(D)…………………………………………..15

**Texas Rules of Civil Procedure**
Texas Rules of Appellate Procedure 39.1…………………………………………8
Texas Rule of Civil Procedure 510.3(e)………………………………………….. 13

Texas Rule of Civil Procedure 736.1(d)…………………………………. 11, 15, 16

**Texas Statutes**
Texas Civil Practice and Remedies Code §16.003(a)……………12,13,19,20,22,27

Texas Property Code § 24.002   …………………………………………………...10,15

Texas Property Code § 24.004……………………………………………………….15

Texas Property Code § 24.005……………………………………………………….15

**Other Sources**
Fuchs, Fred, "Forcible Detainer Lawsuits: Issues and Traps for the Unwary,"
   Updated October 1, 2013, page 101. See
   http://tjcja.org/resources/evictions........................................................ 19

## STATEMENT OF THE CASE

This is an appeal from the forcible detainer final judgment rendered by the Honorable Judge Todd T. Wong in the County Civil Court at Law Number One in Austin, Travis County, Texas. The Court ruled in favor of Appellee/Plaintiff despite a previously rendered adverse judgment from the same court[1] and even though Appellee's current forcible detainer case had been filed more than two years after the alleged cause of action accrued.

Appellants' central issues in this appeal are (i) an inherent issue of title existed in the justice court and the county court thereby divesting each of jurisdiction to proceed, (ii) that Appellee violated Texas Property Code §24.005 in prematurely filing its forcible detainer suit, (iii) that Appellee filed this case outside the applicable two-year statute of limitations for a forcible detainer case, and (iv) Appellee's suit should be barred by res judicata.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure 39.1, Appellants request oral argument and submit that it would materially aid the decisional process in this case.

## ISSUES PRESENTED FOR REVIEW

ISSUE 1: The Trial Court lacked jurisdiction.

---

[1] On December 20, 2012.

ISSUE 2:    Appellee's failure to comply with Texas Property Code §24.005.

ISSUE 3:    Applying Texas Civil Practice and Remedies Code Section 16.00(a) the two-year statute of limitations.

ISSUE 4:    Applying Res judicata.  Pg 28

## STATEMENT OF FACTS

1.    On June 22, 2001, Appellants financed

(the "Subject Property") which is more formally described as:

LOT 2, BLOCK "D", OF SCOFIELD FARMS PHASE VII, SECTION I RESUBDIVISION OF THE AMENDED PLAT OF SCOFIELD FARMS PHASE 4 A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 95, PAGES 223-25, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

2.     As part of the initial financing arrangement Appellants signed a Texas Home Equity Adjustable Rate Note[2] ("Note") and a Texas Home Equity Security Instrument[3] ("Deed of Trust").  In the Deed of Trust, the "Lender" was defined as HOME CAPITAL INC, a Georgia Corporation.

3.     The Deed of Trust states that "[i]f the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchase at

---

[2] RR Vol. 3, Pg 43, Defendant's Exhibit 1.
[3] RR Vol. 3, Pg 5, Plaintiff's Exhibit 1; CR Pg 58.

the sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession."[4]

4.    On December 10, 2010, Appellee filed an Application for Court Order for Foreclosure under Texas Rules of Civil Procedure 736[5]. Their application was verified by Appellee's counsel[6] and contained a copy of Appellants' Note, which it claimed was a true and correct and showed that the Note had been endorsed by HOME CAPITAL INC. to THE PROVIDENT BANK..[7] Neither the endorser nor the endorsee were included in the Application, nor were any documents attached showing any relationship with Appellee.

5.    According to the Substitute Trustee's Deed,[8] on April 03, 2012 presented by Appellee, the Property was allegedly sold to Appellee Household Finance Corp. III., for the credit bid of $238,049.90. The Substitute Trustee's Deed alleges that, although the original mortgagee was HOME CAPITAL INC., the alleged Current Mortgagee was HOUSEHOLD FINANCE CORP. III, and the Mortgage Servicer was HSBC MORTGAGE SERVICES, INC.

5.    Appellee's attorney Hughes, Watters & Askanase, LLP sent a letter entitled Notice to Vacate Premises dated May 3, 2012[9] and filed a forcible detainer

---

[4] RR Vol. 3, Pg. 11, Plaintiff's Exhibit 1.
[5] RR Vol. 3, Pg 50.
[6] As required by Texas Rules of Civil Procedure 736.1(d)(6).
[7] RR Vol. 3, Pg. 57.
[8] RR Vol. 3 Pg. 18, Plaintiff's Exhibit 2; CR Pg. 18.
[9] RR Vol. 3, Pg. 48, Defendant's Exhibit 2.

on August 20, 2012. Judgment was rendered by the Travis County Court at Law Number Two in favor of Appellants on December 20, 2012[10]; Appellee appealed the decision to the Third Court of Appeals but dismissed their appeal on July 18, 2013.[11]

6.     Just over two months later, Appellee's attorney Hughes, Watters & Askanase, LLP, sent another letter titled a Notice to Vacate Premises dated October 8, 2015[12]; it was not delivered to Appellants until October 17, 2014.[13]  On the very same day, Appellee filed their current Complaint for Forcible Detainer and Original Petition[14], well after the two year limitation[15] from April 3, 2014.

7.     On November 6, 2014, the Honorable Justice of the Peace Judge Glenn Bass rendered judgment of possession[16] for Appellee.  Appellants appealed the judgment to County Court.

8.     On March 31, 2015, the County Court awarded judgment for Appellee[17], despite the statute of limitations found in Tex. Civ. Prac. & Rem. Code

---

[10] Cause # C-1-CV-12-009421, *Household Finance Corp III v Femi Onabajo, et al*, County Court at Law #2, Travis County, Texas.
[11] Cause No. 03-13-00086-CV.
[12] RR Vol. 3 Plaintiff's Exhibits 3,4,and 5 Page 23, 25, and 27 of the Reporter's Record;  Page 26 through 30 of the Clerk's record
[13] RR Vol. 3, Pg. 30-31, Plaintiff's Exhibit 5.
[14] CR 55 Through 57.
[15] Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).
[16] CR 10.
[17] CR 98; RR Vol. 2, Pg. 47.

Ann. § 16.003 and the lack of jurisdiction because of an intertwined issue of title divesting the justice and county courts of jurisdiction.

## ARGUMENT AND AUTHORITIES

**ISSUE 1:    The Trial Court lacked Jurisdiction.**

Forcible detainer is a procedure to determine the right to immediate possession of real property when there is no unlawful entry and is intended to be a speedy, simple, and inexpensive procedure for obtaining possession without resorting to a suit on the title. *Montenegro v. Wells Fargo Bank, N.A.*, No. 03-13-00123-CV, 2015 WL 3543055, at *1 (Tex. App. June 3, 2015) citing *Williams v. Bank of New York Mellon,* 315 S.W.3d 925, 926 (Tex.App.–Dallas 2010, no pet.); *see also* Tex.R. Civ. P. 510.3(e) (only issue before justice court in eviction cases is "right to actual possession and not title"). A forcible-detainer action will lie when a person in possession of real property refuses to surrender possession on demand if the person is a tenant at will or by sufferance.  *See* Tex. Prop. Code § 24.002(a); *Jaimes v. Federal Nat'l Mortg. Ass'n,* No. 03–13–00290–CV, 2013 WL 7809741, at *1 (Tex.App.–Austin Dec. 4, 2013, no pet.); *Rice v. Pinney,* 51 S.W.3d 705, 709 (Tex.App.–Dallas 2001, no pet.).

The sole issue in a forcible-detainer suit is who has the right to immediate possession of the premises. *Rice,* 51 S.W.3d at 709. However, where the right to immediate possession necessarily requires resolution of a title dispute, the justice

court has no jurisdiction to enter a judgment and may be enjoined from so doing. *Haith v. Drake,* 596 S.W.2d 194, 196 (Tex.Civ.App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.). The justice courts and the county courts at law are only deprived of jurisdiction to adjudicate a forcible detainer action if the question of title is <u>*so intertwined*</u> with the issue of possession that possession may not be adjudicated without first determining title. *A Plus Investments, Inc. v. Rushton*, 2004 WL 868866, 2004 Tex. App. Lexis 3605 (Tex. App.—Ft. Worth 2004)(emphasis added).

**Standard of Review**

The "standard of review" used by the appellate court to review a lack of jurisdiction is de novo. *Tex. Dep't of Parks & Wildlife v.Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The Court should construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause. Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties.[18] Further, a party's standing or lack thereof, is a component of subject matter jurisdiction and it may be raised for the

---

[18] *Texas Employment Comm'n v. International Union of Elec., Radio and Mach.Workers, Local Union No. 782,* 163 Tex. 135, 352 S.W.2d 252, 253 (1961); This court recently reiterated that axiom in *Gorman v. Life Insurance Co.,* 811 S.W.2d 542, 547 (Tex.), *cert. denied,* 502 U.S. 824, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991).

first time on appeal. [19]

### *Heightened Scrutiny with Home Equity Loans*

In this case, the documents giving rise to Appellee's claim for forcible detainer a heightened scrutiny because they involve a home equity loan, more particularly Appellants' Texas Home Equity Security Instrument.[20] The Home Equity Security Instrument provides that "[i]f the Property is sold *pursuant to this Paragraph* ... [Appellants] shall immediately surrender possession ... to the purchaser at the sale ... [or][i]f possession is not surrendered ... shall be a tenant at sufferance ..." (emphasis added). This means a foreclosing entity **must** comply with the article XVI, section 50(a)(6)(D) of the Texas Constitution, which requires a court order for foreclosure. *See* TEX. CONST. art. XVI § 50(a)(6)(D).

The requirements of the Texas Constitution, which were also part of this home equity security instrument, were disregarded. *See* TEX. CONST. art. XVI § 50(a)(6)(D). In seeking a court order for foreclosure under Texas Rules of Civil Procedure 736, only the person or entity legally authorized to prosecute the foreclosure.[21] Appellee's Application for Order for Foreclosure[22], verified by Appellee's counsel[23], contains a copy of Appellants' Note, which it claims is true and correct, showing that the Note had been endorsed by HOME CAPITAL INC.

---

[19] *Texas Ass'n of Bus. v. Texas Air Control Bd*., 852 S.W.2d 440, 445 (Tex. 1993).
[20] RR Vol 3, Pg 58, Texas Home Equity Security Instrument.
[21] Texas Rule of Civil Procedure 736.1(d)(1)(A).

to THE PROVIDENT BANK..[24]  Without more information, the only entity entitled to enforce the Note was THE PROVIDENT BANK. There are no documents that show that Appellants has any legal authority to enforce the note or seek foreclosure of the Property. Absent the right to foreclose, Appellee could not transfer ownership of the property. Without this authority, Appellee's foreclosure and subsequent purchase of the Property through the Substitute Trustees Deed was void.  The conflict regarding title, however, is apparent.

### *A Plus Investments, Inc. v. Rushton*

The analysis by the Ft. Worth court is instructive.[25]  In particular, the Court focused on the requirement in a security instrument granting a foreclosure right that the right to foreclose and a landlord-tenant relationship only arises if the property is sold *pursuant to* the terms of the agreement.  *Id*., at 5-6.

The *A Plus Investments, Inc. v. Rushton* test applies, holding that only the party granted the right to foreclose may do so. In the Note and Deed of trust, the parties are parties given contingent powers, and the names on the Note and Deed of Trust and the party seeking to enforce same are not the same.  The evidence introduced in the lower courts shows a failure to connect the dots and a complete disregard when the issue was raised by Appellants.  This case exemplifies a

---

[22] RR Vol. 3, Pg 50.
[23] As required by Texas Rules of Civil Procedure 736.1(d)(6).
[24] RR Vol. 3, Pg. 57.

situation when the issue of possession is extremely intertwined with the question of title. This fact situation deprives the lower court of jurisdiction because the documents inherently create a title dispute.

"But factual disputes may arise when the party seeking to foreclose is not the original mortgagee, as is most often the case these days. In such cases the foreclosing party must be able to trace its rights under the security instrument back to the original mortgagee. *Leavings v. Mills*, 175 S.W.3d 301, 310 (Tex. App. - Houston [1" Dist.] 2004, no pet.)."[26] As is here the case, there is just no evidence of how Appellee acquired its rights. If the Substitute Trustees Deed is void then any interest Appellee had at the time of trial in the justice court would be void as well making Appellee lack any standing to proceed with its cause of action.

In order to enforce the note as a holder and move forward with foreclosure, a party who is not the original lender must prove "successive transfers of possession and endorsement establishing an "unbroken chain of title." *Leavings*, 175 S.W.3d at 310. Thus, with certain exceptions, possession of the note is typically required in order for a holder to enforce it. *Millet v. JP Morgan Chase, N.A.*, 20 12 WL 1029497 at *3 (W.D. Tex.2012).

---

[25] *A Plus Investments, Inc. v. Rushton*, 2004 Tex. App. Lexis 3605 (Tex. App.— Ft. Worth 2004)

[26] *Miller v. Homecomings Financial, LLC*, 881 F. Supp.2d 825 (S.D. Tex. 2012).

Assuming that the interest Appellee had at the time of the trial in the justice court was void, and therefore Appellee lacked standing to proceed in the Justice Court and thus the county court de novo hearing. Jurisdiction over forcible-detainer actions is expressly given to the justice court of the precinct where the property is located and, on appeal, to the county court for a trial de novo. *See* Tex. Prop.Code Ann. § 24.004; *Ward v. Malone*, 115 S.W.3d 267, 269 (Tex.App.-Corpus Christi 2003, pet. denied). The appellate jurisdiction of a statutory county court is confined to the jurisdictional limits of the justice court, and the county court has no jurisdiction over an appeal unless the justice court had jurisdiction. *Ward,* 115 S.W.3d at 269. Since the justice court clearly did not have jurisdiction and the Appellee did not have standing, the county court lacked jurisdiction to hear this matter.

**ISSUE 2:** **Appellee's failure to comply with Texas Property Code §24.005.**

Appellee must strictly comply with Texas Property Code § 24.002 requirements that state the landlord must make a written demand for possession in compliance with § 24.005. See, e.g., *Onion Creek Luxury Apartments v. Powell,* No. 03-11-00008-CV, 2011 Tex. App. LEXIS 7261, **5-7 (Tex. App. – Austin, Aug. 31, 2011, no pet.) (mem. op.) (upholding trial court judgment of possession for tenant on ground that landlord failed to prove it had given the tenant the required notice to vacate prior to filing suit).  If the plaintiff fails to

give a three day notice to vacate prior to filing a forcible detainer case, the case must be dismissed because the law requires that the notice to vacate be given "before the landlord files a forcible detainer suit." *See* Tex. Prop. Code Ann. §24.005(a). If the landlord files suit before expiration of the time given to the tenant to vacate, the suit is premature and should be dismissed. Tex. Prop. Code Ann. §24.005(b) (West Supp. 2012).

If the other errors presented in this brief are disregarded and the Court presumes Appellee was entitled to seek its forcible detainer action against Appellants, then the Court must examine the filing date for Appellee's Complaint for Forcible Detainer and Original Petition,[27] Appellee's Notice to Vacate Premises[28] and the date such notices were delivered to Appellants.[29] The date on which the notices are delivered is the date used to calculate the notice period for Texas Property Code 24.005(g). Appellee's notices were not received by Appellants until October 17, 2014, which is the same day that Appellee filed their forcible detainer petition. Appellee violates Texas Property Code 24.005, the trial court erred in not dismissing the case.

> **ISSUE 3:** **Applying Texas Civil Practice and Remedies Code Section 16.003(a) the two-year statute of limitations.**

---

[27] CR Pg 55.
[28] RR Vol. 2, Pg 12, RR Vol 3, Pg 30; CR Pg 92.
[29] RR Vol 3, Pg 30.

The "standard of review" used by an appellate court to review a trial courts legal conclusions is *de novo*.[30] Here the trial court decided issues regarding statute of limitations, therefore making a determination of law.

The statutory precedent to this question is Texas Civil Practice and Remedies Code §16.003(a):

> "(a) Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues."

Analysis of a statute is best done by using "…the basic principle that a statute should be read as a harmonious whole, with its separate parts being interpreted within their broader statutory content in a manner that further statutory purpose.[31] In this statute the statement of the Texas Legislature is a "clear statement of congressional intent…to negate a presumption which is incorrect.[32] The Texas legislature limited the time in which a party-plaintiff could pursue a cause of action associated with real or personal property. This is consistent with each of the other enumerated causes in this section of the statute but the real outstanding question is the date on which the cause of action accrues.

---

[30] However, we must apply a de novo standard of review to the trial court's legal conclusions because a trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Okorafor v. Uncle Sam & Assocs., Inc.,* 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

[31] CRS Report for Congress, Statutory Interpretation: General Principles and Recent Trends, August 31, 2008 Yule Kim Legislative Attorney American Law Division.

**Accrual**

When a cause of action accrues is a question of law, not fact. *Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 202 (Tex.2011); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). "Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek relief." *Id.* Put another way, "a cause of action can generally be said to accrue when the wrongful act effects an injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *See Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987) ("A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim ...").

A purchasing party at a foreclosure sale acquires the right to possess the property. *See Coinmach Corp. v. Aspenwood Apartment Corp.,* 417 S.W.3d 909, 918 (Tex.2013). It would seem that Appellee's cause of action for forcible detainer would accrue at the time they allegedly acquired their property interest from the foreclosure of the Property on April 3, 2012. In addition, Appellee's ability to recover possession of the property through a forcible-detainer action arose, and therefore, the statute of limitations does not begin to run, when possession was first demanded and refused by Appellants. *See Jones v. American*

---

[32] *Id.*

*Fed. Bank, F.S.B.,* No. 05–91–00634–CV, 1992 WL 32961, at *2 (Tex.App.—

Dallas 1992, writ dism'd w.o.j.) (not designated for publication). Using that date,

Appellee's cause of action arose on May 3, 2012 and the statute of limitations

should have ended two years from that date.

The Justice and County courts receive training materials on this very subject

by Fred Fuchs with the Texas Rio Grande Legal Aid clearly states: [33]

> K.   Two-Year Statute of Limitations.
>
> a.   A landlord must bring a suit for forcible detainer within two years of the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. §16.003(a) (West Supp. 2012). Political subdivisions, (and this appears to include public housing authorities), however, are not barred by the two year limitations period. See Tex. Civ. Prac. & Rem. Code Ann. § 16.061(a) (West 2008).
>
> b.   Each **breach of the lease** constitutes a separate and independent cause of action. See *Williams v. Le Garage de La Paix*, 562 S.W.2d 534, 535 (Tex. Civ. App. -- Houston [14th Dist.] 1978, writ ref'd n.r.e.) (each month's rent under a lease constitutes a separate cause of action).

Fuchs at pg 101 (emphasis added).

The distinction that, in a non-lease forcible detainer case, a new cause of

action is created each new month an occupant is present was most likely created by

paragraph b above, which specifically applies to lease cases only. In the case at

bar, there was no breach of any lease; if there had been a lease agreement in place,

---

[33] Fuchs, Fred, "Forcible Detainer Lawsuits: Issues and Traps for the Unwary," Updated October 1, 2013, page 101. See http://tjcja.org/resources/evictions.

the argument that each month a new cause of action accrued each month Appellants refused to vacate would make more sense. That is not the case.

"[F]or purposes of application of a statute of limitations, a cause of action generally accrues when a wrongful act affects an injury, regardless of when the plaintiff learns of such injury...Generally, a cause of action for injury to real property accrues when the injury is committed."[34] The general rule is that a cause of action accrues when a wrongful act effects an injury, regardless of when the plaintiff learns of such injuries.[35] "When an act invades a legally protected right or interest, the claim accrues when the act occurs." The exceptions to this general rule[36] but those are not present in the case at bar.

**Continuing Tort, Inapplicable**

A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action. *Id; Two Pesos, Inc.* v. *Gulf Ins. Co.,* 901 S.W.2d 495, 500 (Tex. App.-- Houston [14th Dist.] 1995, no writ) (citing *Arquette v.Hancock* , 656 S.W.2d 627, 629 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.)). The Texas Supreme Court has "neither endorsed nor addressed" the continuing tort doctrine*, see Creditwatch, Inc.* v.

---

[34] *Jones v. Texaco, Inc.*, 945 F. Supp. 1037 – Dist. Court, SD (Texas 1996).
[35] *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858 (Tex. App. 1997).
[36] If there was fraud, fraudulent concealment, and the discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred. *See*

*Jackson,* 157 S.W.3d 814, 816 n.8 (Tex. 2005), *Coinmach Corp. v. Aspenwood Apt. Corp.,* 417 S.W.3d 909 (Tex. 2013). The continuing tort doctrine is not the law in Texas, and even if it was, the doctrine would not apply to the facts of this case.

In determining whether there is a continuing tort, "care must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortuous acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not." *Krohn v. Marcus Cable Assocs., L.P.,* 201 S.W.3d 876, 881 (Tex. App. 2006) (quoting *Rogers,* 162 S.W.3d at 290).

The doctrine does not apply to actions that are "complete in themselves;" rather, it applies to a continuing course of conduct, which, over time, causes injury. See *Twyman v. Twyman,* 790 S.W.2d 819, 821 (Tex.App.-Austin 1990) (applying the continuous tort doctrine when a husband repeatedly urged that his wife's participation in certain sexual conduct was necessary to save their marriage); *Newton,* 895 S.W.2d at 506. In the area of trademarks, a claim is actionable throughout the period of infringement, and is therefore a "continuous harm." See *Two Pesos, Inc.,* 901 S.W.2d at 500; *See also Roehrs v. Conesys, Inc.,*2005 U.S. Dist. LEXIS 33295, 2005 WL 3454015(N.D. Tex.Dec. 14, 2005).

---

*Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455-456 (Tex. 1996), *Jim Arnold*

Even though several courts of appeals have held that a cause of action for a continuing tort does not accrue until the defendant's tortuous conduct ceases, those cases are different from this case. *See Coinmach Corp.* v. *Aspenwood Apt. Corp.,* 2013 Tex. LEXIS 953 (Tex. 2013); First Gen. Rlty. Corp. v. Maryland Cas. Co., 981 S.W.2d 495, 501 (Tex.App.—Austin 1998, pet. denied) *Krohn* v. *Marcus Cable Assocs., L.P.,* 201 S.W.3d 876, 880 (Tex. App.-Waco 2006, pet. denied); *Rogers* v. *Ardella Veigel Inter Vivos Trust, 162* S.W.3d 281, 290 (Tex. App.-Amarillo 2005, pet. denied); *W W Laubach Trust* v. *The Georgetown Corp.,* 80 S.W.3d 149, 159 (Tex. App.-Austin 2002, pet. denied); *Tectonic Realty Inv. Co. y. CNA Lloyd's a/Texas Ins. Co.* , 812 S.W.2d 647, 654 (Tex. App.--Dallas 1991, writ denied). **All of these cases involve written term leases.**

The holdover occupancy of a tenant under a lease contract is different. Each time a tenant under a lease fails to pay rent gives rise to an independent cause of action. *Williams v. Garage Paix, Inc.*, 562 S.W.2d 534, 535 (TexCiv.App—Houston [14 Dist.] 1978). However, this case surrounds a tenant at will or at sufferance, including the occupant vis-à-vis the purchaser of a substitute trustee sale. There are no obligations or collaborations between the parties after the occupant has been given notice to vacate. The adversarial relationship over possession in this case stems from, arguably making Appellants a tenant at will or

---

*Corp. v. Bishop*, 928 S.W.2d 761 (Tex. App. 1996).

at sufferance, rather than by lease contract. The difference is dispositive. And the forcible detainer does not cease by the sending of a new notice to vacate.

Appellants' possession did not cease and was continuous, and thus Appellants' noncompliance allegedly inflicted injury on Appellee. Any future notices to vacate are superfluous and do not reset the clock for the statute of limitations. This illogical interpretation would result in Appellee controlling the running of the statute of limitations, which is an absurd result.

### *Massad, Pham* and *Puentes* Holdings

This Court used flawed reason in refusing to apply the two year statute of limitations because a forcible-detainer action accrues *each time* a person refuses to surrender possession of real property after a person entitled to possession delivers proper written notification to vacate.[37] In *Massad*, this Court based its opinion on the Houston's Court of Appeals opinion in *Pham*,[38] which in turn based its opinion on the El Paso Court of Appeals opinion *Puentes*.[39] However, the *Puentes* case was not presented with the statute of limitations argument but discussed res judicata only and should not be applied to statutory interpretation of

---

[37] *Montenegro v. Wells Fargo Bank,* N.A., No. 03-13-00123-CV, 2015 WL 3543055, at *3 (Tex. App.-Austin June 3, 2015, no pet.); citing *Massaad v. Wells Fargo Bank, Nat'l Ass'n,* No. 03-14-00202-CV, 2015 WL 410514, at *1 (Tex. App.-Austin Jan. 30, 2015, no pet.) (each refusal to surrender possession constitutes new forcible detainer); *Pham,* 449 S.W.3d at 235-36 (same)

[38] *Federal Home Loan Mortg. Corp. v. Pham.,* 449 S.W.3d 230, 235–36 (Tex.App.–Houston [14th Dist.] 2014, no pet.)

Texas Civil Practice and Remedies Code §16.003. *Puentes* is wrongly decided and contrary to well-established Texas law

Appellee filed their prior forcible detainer case, received an adverse judgment, and dismissed their appeal. Appellee should not be able to revive or create a new cause of action, which involves the same parties, same facts, and same legal issues, by sending a new notice to Appellant. By allowing this, the Court is completely disregarding the limitations period set out by statute and leads to absurd results.[40]

**ISSUE 4:    Applying Res judicata.**

Res judicata prevents parties and those in privity with them from re-litigating a case that a competent tribunal has adjudicated to finality. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206 (Tex. 1999). The doctrine is intended to curb vexatious litigation and promoting judicial economy. *See Ingersoll-Rand Co.,* 997 S.W.2d at 207. There is a long line of Texas cases that the cause of action accrues when the injury occurs, and that a decision on possession in forcible detainer context is res judicata between the parties. *Reese v. Reese, 672 S.W.2d 1, 2 (Tex. Civ. App.—Waco 1984, no writ)*; *Buttery v. Bush, 575 S.W.2d 144, 146 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.)*.

---

[39] *Puentes v. Fannie Mae,* 350 S.W.3d 732, 739 (Tex. App. - El Paso 2011, pet. dism'd)
[40] See *McKinney v. Blakenship,* 282 S.W.2d 69,698 (Tex. 1955).

**Single Action Rule**

The single action rule, also known as the rule against splitting claims, provides a plaintiff one indivisible cause of action for all damages arising from a defendant's single breach of a legal duty. *Pustejovsky* v. *Rapid-American Corp.* v. *Pustejovsky,* 35 S.W.3d 643, 646 (Tex.2000), citing *Gideon* v. *Johns-Manville Sales Corp.,* 76 1 F.2d 1129, 1136-37 (5th Cir. 1985). This equitable doctrine is a species of res judicata that prohibits splitting a cause of action and subsequently asserting claims that should have been litigated (or in the present case were litigated) in the first instance and prevents more than one suit growing out of the same subject-matter of litigation and "and our decisions from the first have steadily fostered this policy." *Id*. at 647.

If a suit involves the same issue (possession of the Property), the same property, same parties, and the same date of foreclosure sale, the Court cannot construe a new set of circumstances exists because a more current notice to vacate is issued. It is obvious the accrual of action began when the first notice to vacate issued Appellants refused to vacate the Property. It is at that point in time when the tenant at sufferance takes on the legal status of forcible detainer. Unless there is an agreement or some other written concession, the forcible detainer maintains that legal status until he is dispossessed, his dispossession is barred by limitations, or he reaches a state of repose. In this case, there is no new owner

who issued a notice to vacate, it is the same party, Appellee, whose action accrued at the latest three days after May 3, 2012. Appellee's prior lawsuit and the current lawsuit involve the exact same parties, the same issues, and same cause of action. The only thing that changed from each suit was the date on Appellee's Notice to Vacate letter.

## PRAYER

WHEREFORE, Appellants respectfully request:

1.  That this Court reverse the trial court's judgment and dismiss the case, or, in the alternative,

2.  That this Court reverse the trial court's judgment and remand the case for further proceedings, or

3.  That this Court reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered, and

4.  For such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: */s/ Penny Y. Haye*
Penny Y. Haye
State Bar No. 24030363
Law Office of Penny Haye
7703 North Lamar Blvd Suite 340
Austin, Texas 78752
Telephone: (512) 677-4293
Facsimile: (512) 777-4535
Penny_haye@sbcglobal.net
ATTORNEY FOR APPELLANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of November 2015, a true and correct copy of the foregoing was served upon counsel of record for Appellee via this Court's online filing system to the following:

Sarah Robbins
Hughs, Watters & Askanase, L.L.P.
Three Water Center
333 Clay, 29th floor
Houston, Texas 77002
ATTORNEY FOR APPELLEE

By: */s/ Penny Y. Haye*
Penny Y. Haye

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this brief (excluding any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 5,739.

By: */s/ Penny Y. Haye*
Penny Y. Haye

# <u>APPENDIX</u>

THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION

THIS LOAN HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(0), ARTICLE XVI OF THE TEXAS CONSTITUTION

# TEXAS HOME EQUITY
## ADJUSTABLE RATE NOTE   Loan No   99-11055
(LIBOR 6 Month Index (As Published in The Wall Street Journal)-Rate Caps)
(Cash Out - First Lien)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY
MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

JUNE 22, 2001          Place of Execution:          ATLANTA                    GEORGIA
      [Date]                                           [City]                        [State]

13107 KIRK GLENN DR, AUSTIN, TEXAS 78727
(Property Address)

1.   BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for a loan that I have received, I promise to pay U.S $248,000 00 (this amount is called "principal"), plus interest to the order of the Lender. The Lender is HOME CAPITAL INC , A GEORGIA CORPORATION I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

2.   INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid I will pay interest at a yearly rate of          11.990 %. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason or acceleration of the maturity or prepayment of the loan, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

3.   PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month

I will make my monthly payments on the     1st   day of each month beginning on   AUGUST 2001   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  My monthly payments will be applied to interest before principal  If, on   JULY 1, 2031     , I still owe amounts under this Note  I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 7 DUNWOODY PARK SUITE 104, ATLANTA, GEORGIA 30338

or at a different place if required by the Note Holder

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U S $ 2,549 05                This amount may change

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the     1st   day of JULY, 2004 and on that day every 6th month thereafter   Each date on which my interest rate could change is called a "Change Date "

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE (LIBOR 6 MONTH INDEX) (CASH OUT-FIRST LIEN)
Document Systems Inc (800) 649-1362
Page 1 of 4

TXRSUB1.NTE

DEFENDANT'S
EXHIBIT

/

PENGAD 800-631-6989

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding EIGHT AND 740/1000 percentage point(s) ( 8.740 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.990 % or less than 11.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 18.990 %, which is called the "Maximum Rate."

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES AND FEES**

All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits, or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment. My acceptance of any such refund will constitute a waiver of any right of action I might have arising out of such overcharge.

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this Section 6 shall supersede any inconsistent provision of this Note or the Security Instrument.

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE (LIBOR 6 MONTH INDEX) (CASH OUT-FIRST LIEN)
Document Systems, Inc. (800) 649-1362
Page 2 of 4

TXHEL223.5 7E



"If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12 APPLICABLE LAW

This Note shall be governed by the laws of the State of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 13 NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) OF THE UNDERSIGNED

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT ]

_____
FEMI S ONABAJO                (Borrower)

_____
CHRISTY ALFRED ONABAJO        (Borrower)

_____
                              (Borrower)

_____
                              (Borrower)

_____
                              (Borrower)

_____
                              (Borrower)

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE (LIBOR 6 MONTH INDEX) (CASH OUT-FIRST LIEN)
Document Systems, Inc. (800) 649-1362
Page 4 of 4

TXHEL384 HTE

# Allonge to Promissory Note

Without recourse pay to the order of:

_The Provident Bank_

By: _____

Name: C.E. Harrison

Title: Vice President

Company: Home Capital, Inc.

Loan Information:

Borrower: Femi S. Onabajo & Christy Alfred Onabajo

Address: 13107 Kirk Glenn Drive
          Austin, Texas 78727

Loan Amount: $248,000.00

Loan Date: June 22, 2001

Exhibit D

01010505050547

RETURN TO
CASH / STAI
STEWART TITLE AUSTIN, INC.
ATTN POLICY DEPARTMENT
P O Box 1806
Austin, TX 78767
After Recording Please Return To:

HOME CAPITAL INC.
Company Name

Name of Natural Person

7 DUNWOODY PARK SUITE 104
Street Address

ATLANTA GEORGIA 30338
City, State, Zip / STAY

STEWART TITLE AUSTIN, INC.
ATTN POLICY DEPARTMENT
P. O. Box 1806
Austin, TX 78767

TRV 2001107916
12 pgs

**EXHIBIT A**

12

——————————— [Space Above This Line For Recording Data] ———————————

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (Cash Out - First Lien)     Loan Number 99-11055

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

THIS SECURITY INSTRUMENT is made on JUNE 22, 2001
The grantor is FEMI S. ONABAJO AND CHRISTY ALFRED ONABAJO

("Borrower") The trustee is
C.E. HARRISON, 7 DUNWOODY PARK, SUITE 104, ATLANTA GA 30338
, whose address is

("Trustee") The beneficiary is
HOME CAPITAL INC., A GEORGIA CORPORATION
which is organized and existing under the laws of GEORGIA
and whose address is 7 DUNWOODY PARK SUITE 104, ATLANTA, GEORGIA 30338

("Lender") Borrower owes Lender the principal sum of
TWO HUNDRED FORTY EIGHT THOUSAND AND 00/100
Dollars (U S $ 248,000.00                ) This debt is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (referred to herein as the "Extension of Credit") and is evidenced by Borrower's note dated the same date as this Security Instrument (the "Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on JULY 1, 2031
This Security Instrument secures to Lender (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
TRAVIS
County, Texas

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)–
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems Inc (800) 649-1362        Page 1 of 9        Form 3044 1 01/98

TXHECO1 DOT

58

LOT 2, BLOCK "D", OF SCOFIELD FARMS PHASE VII, SECTION 1  *map*
RESUBDIVISION OF THE AMENDED PLAT OF SCOFIELD FARMS PHASE 4, SECTION
4 A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OF
PLAT, OF RECORD IN VOLUME 95, PAGES 223-225, OF THE PLAT RECORDS OF
TRAVIS COUNTY, TEXAS

which has the address of 13107 KIRK GLENN DR
                                              [Street]
AUSTIN                              78727                    ("Property Address")
[City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property", provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

Borrower and Lender covenant and agree as follows

1. **Payment of Principal and Interest; Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note

2. **Funds for Taxes and Insurance** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) hazard insurance premiums for the Property, and (d) flood insurance premiums for the Property, if any  These items are called "Escrow Items"  Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge  However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made  The Funds are not pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion  Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)-                Form 3044 1 01/98
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems Inc. (800) 649-1362                    Page 2 of 9

TXHECO2 DOT

59

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied first, to amounts payable under Paragraph 2, second, to interest due, third, to principal due, and last, to any late charges due under the Note

**4. Charges; Liens** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any Borrower shall pay these obligations in the manner provided in Paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Paragraph 4 If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument It Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance This insurance shall be maintained in the amounts and for the periods that Lender requires The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause Lender shall have the right to hold the policies and renewals If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible If the restoration or repair is not economically feasible, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower Il Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due The 30-day period will begin when the notice is given

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of the payments If under Paragraph 20 or 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest Borrower may cure such a default and reinstate, as provided in Paragraph 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest Borrower shall also be in default and may be held personally liable for debt evidenced by the Note or this Security Instrument if Borrower gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)-      Form 3044 1 01/98
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems Inc (800) 649-1362     Page 3 of 9

TXHEC03 DOT

connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender, so far as applicable, may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs Although Lender may take action under this Paragraph 7, Lender does not have to do so No powers are granted by Borrower to the Lender or Trustee that would violate provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other applicable law

Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

8 **Inspection** Lender or its agent may make reasonable entries upon and inspections of the Property Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection

9. **Condemnation** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, shall be paid to Lender to be applied to the sums secured by this Security Instrument

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of such payments

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the original Borrower or Borrower's successors in interest from Borrower's obligations under the Note and this Security Instrument Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraphs 16 and 23 Borrower's covenants and agreements shall be joint and several subject to the provisions of Paragraph 23 Any Borrower who co-signs this Security Instrument, but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution providing for execution hereof, in order to establish a valid lien, by the spouse of each owner of the Property, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent

12. **Lender's Right-to-Comply** It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)-     Form 3044.1 01/98
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems Inc (800) 649-1362     Page 4 of 9

TXHSC04 DOT



All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this Paragraph 12, with Lender's obligations under the Extension of Credit Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, as provided in this Paragraph 12, with any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Paragraph 13, and will give Lender a reasonable time to comply Borrower will cooperate in reasonable efforts to effectuate any compliance Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by the Lender to comply with its obligations under this Extension of Credit

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Paragraph 12, and such document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith

All agreements between Lender and Borrower are expressly limited so that any interest, loan charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law

If a law, which applies to this loan and which sets maximum interest, loan charges or fees is finally interpreted so that the interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limits, or a determination is made at any time by Lender that interest, loan charges or fees that the Lender has collected or is entitled to collect in connection with this loan exceed the permitted limit, then (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower The Lender may choose to make this refund by reducing the principal Borrower owes under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

It is the express intention of the Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document

Lender's right-to-comply as provided in this Paragraph 12 shall survive the payoff of the Extension of Credit The provision of this Paragraph 12 shall supersede any inconsistent provision of the Note or this Security Instrument

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given in writing by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given in writing by first class mail (but, by certified mail if the notice is given pursuant to Paragraph 12 hereof) to Lender's address stated herein or any other address Lender designates by notice to Borrower Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 13

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of Texas In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)-
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems Inc (800) 649-1362

Form 3044 1 01/98

Page 5 of 9

TXHEC05 DOT

conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision To this end the provisions of this Security Instrument and the Note are declared to be severable

15. **Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by the Borrower related to the Extension of Credit

16. **Transfer of the Property or a Beneficial Interest in Borrower** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

17 **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument after entry of a court order permitting exercise of such power of sale, or (b) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Paragraph 16

18. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 13 above and applicable law The notice will state the name and address of the new Loan Servicer and the address to which payments should be made The notice will also contain any other information required by applicable law

19. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this Paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials As used in this Paragraph 19, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

20. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 16 unless applicable law provides otherwise) The notice shall specify (a) the default, (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)-
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems, Inc (800) 649-1362                                    Page 6 of 9

Form 3044 1 01/98

TXHEC06 DOT

cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any remedies permitted by applicable law Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for the Borrower in a judicial proceeding

21. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of the Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law Accordingly, the Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Paragraph 21 shall apply, if Lender invokes the power of sale Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law Lender shall provide a copy of the notice of sale to Borrower in the manner prescribed by applicable law Sale shall be made at public vendue between the hours of 10 a m and 4 p m on the first Tuesday of the month Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines Lender or its designee may purchase the property at any sale In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein Trustee shall apply the proceeds of the sale in the following order (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees, (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it

If the Property is sold pursuant to this Paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession

Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law

22. **Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recording costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50, ARTICLE XVI OF THE TEXAS CONSTITUTION.**

23. **Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment

TXH6C07 DOT

64

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all Borrower's promises and obligations in the Note and this Security Instrument are performed

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud This means that, absent such actual fraud, the Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner

If this Extension of Credit is obtained by such actual fraud, then, subject to Paragraph 11, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Paragraph 23 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument

24 **Proceeds.** The Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender

25. **No Assignment of Wages.** The Borrower has not assigned wages as security for the Extension of Credit

26. **Acknowledgement of Fair Market Value.** Lender and Borrower have executed a written acknowledgement as to the fair market value of Borrower's Property on the date the Extension of Credit is made

27. **Rider(s) to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the riders were a part of this Security Instrument [Check as applicable]

[X] Texas Home Equity Adjustable Rate Rider     [ ] Texas Home Equity Condominium Rider

[ ] Texas Home Equity Planned Unit Development Rider

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)-     Form 3044 1 01/98
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems Inc (800) 649 1362     Page 8 of 9

TXHECO8 DOT



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it

**DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.**

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE

_____     _____
FEMI S. ONABAJO            -Borrower     CHRISTY ALFRED ONABAJO      -Borrower

_____     _____
                          -Borrower                                -Borrower

_____     _____
                          -Borrower                                -Borrower


STATE OF TEXAS,  TRAVIS                           County ss

This instrument was acknowledged before me on    June 22nd, 2001
                                                                  [date]

by    Ruth McDonald      Femi S. Onabajo & Christy Alfred Onabajo
                         [person acknowledging]


(Personalized Seal)
                                                        _____
                                                                          Notary Public

                                            My Commission Expires    1/14/2003

RUTH A McDONALD
Notary Public, State of Texas
My Commission Expires
JAN 14, 2003

TEXAS HOME EQUITY SECURITY INSTRUMENT (Cash Out-First Lien)-                        Form 3044 1 01/98
FNMA/FHLMC UNIFORM INSTRUMENT
Document Systems, Inc (800) 649 1362              Page 9 of 9

TXHEC09 DOT

66

## TEXAS HOME EQUITY ADJUSTABLE RATE RIDER
**(LIBOR 6 Month Index (As Published in The Wall Street Journal) - Rate Caps)**
**(Cash Out - First Lien)** Loan Number: 99-11055

THIS ADJUSTABLE RATE RIDER is made this 22nd day of JUNE ,
2001 , and is incorporated into and shall be deemed to amend and supplement the
Security Instrument of the same date given by the undersigned (the "Borrower") to secure Borrower's
Adjustable Rate Note (the "Note") to HOME CAPITAL INC., A GEORGIA
CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at

### 13107 KIRK GLENN DR, AUSTIN, TEXAS 78727
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE BORROWER'S
INTEREST RATE AND THE BORROWER'S MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY
ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 11.990 % The Note
provides for changes in the interest rate and the monthly payments, as follows

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the 1st day of JULY ,
2004 , and on that day every 6th month thereafter Each date on which my interest rate
could change is called a "Change Date "

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index The "Index" is
the average of interbank offered rates for 6 month U S dollar-denominated deposits in the London
market ("LIBOR"), as published in The Wall Street Journal The most recent Index figure available
as of the first business day of the month immediately preceding the month in which the Change Date
occurs is called the "Current Index "
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information The Note Holder will give me notice of this choice

---

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
EIGHT AND 740/1000 percentage point(s)
( 8.740 %) to the Current Index The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my nw interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.990 % or less than 11.990 % Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
ONE AND 000/1000 percentage point(s) ( 1.000 %)
from the rate of interest I have been paying for the preceding 6 months My interest rate will never be greater than 18.990 %, which is called the "Maximum Rate "

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Texas Home Equity Adjustable Rate Rider

DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

| | | | |
|---|---|---|---|
| FEMI S. ONABAJO | (Borrower) | CHRISTY ALFRED ONABAJO | (Borrower) |
| | (Borrower) | | (Borrower) |
| | (Borrower) | | (Borrower) |

TEXAS HOME EQUITY ADJUSTABLE RATE RIDER (LIBOR 6 MONTH INDEX) (CASH OUT - FIRST LIEN)
Document Systems Inc (800) 649-1362              Page 2 of 2

## RENEWAL AND EXTENSION ADDENDUM TO DEED OF TRUST

**EXECUTED BY:**   Femi S. Onabajo and Christy Alfred Onabajo

**FOR THE BENEFIT OF:**   Home Capital, Inc.

This Note is given in renewal and extension of the following described promissory note(s) and all of the liens, rights, assignments and security interests securing them that are created, made or granted by the following described instruments, all upon and against the herein described real property, which said note(s) and lien(s) are hereby expressly acknowledged by Grantor to be valid and subsisting lien(s) against the property herein described, and it is expressly stipulated and agreed that said lien(s) are hereby renewed, extended and continued in full force and effect to secure the payment of the Note hereby secured and Beneficiary herein or its assigns are duly subrogated to all rights, powers and equities of the original holder of said Note

**First Note**

Date   October 15, 1999

Original Amount   $205,900.00

Payee Jefferson Heritage Mortgage Company

Note and Lien(s) are described in the instrument(s) recorded in the following Volumes and Pages of the Real Property Records of TRAVIS County, Texas

199142003

**First Note Assignment**

Date

Assigned to

Note and Lien(s) are described in the instrument(s) recorded in the following Volumes and Pages of the Real Property Records of TRAVIS County, Texas

## FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

07-03-2001  10 00 AM 2001107916
CORTEZK $31 00
DANA DEBEAUVOIR ,COUNTY CLERK
TRAVIS COUNTY, TEXAS

69

 TRV  12054573

4 PGS

## SUBSTITUTE TRUSTEE'S DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

C&S No. 44-10-5887/Home Equity
HSBC Mortgage Services, Inc.

**Date of Security Instrument:**  June 22, 2001

**Grantor(s):**  Femi S. Onabajo and Christy Alfred Onabajo

**Original Trustee:**  C.E. Harrison

**Original Mortgagee:**  Home Capital Inc., A Georgia Corporation

**Recording Information:**  Volume , Page , or Clerk's File No. 2001107916 in the Official Public Records of TRAVIS County, Texas

**Current Mortgagee:**  Household Finance Corp. III

**Mortgage Servicer:**  HSBC Mortgage Services, Inc. whose address is 636 Grand Regency Blvd, Brandon, IL 33510. Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property.

**Date of Sale:**  04/03/2012

**Amount of Sale:**  $238,046.90

**Grantee/Buyer:**  Household Finance Corp. III
636 Grand Regency Blvd, Brandon, IL 33510

**Legal Description:**  LOT 2, BLOCK "D", OF SCOFIELD FARMS PHASE VII, SECTION 1 RESUBDIVISION OF THE AMENDED PLAT OF SCOFIELD FARMS PHASE 4, SECTION 4 A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OF PLAT, OF RECORD IN VOLUME 95, PAGES 223-225, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS

**Place of Sale of Property:**  In the area designated by the TRAVIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where the foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the place where the Notice of Trustee's Sale was posted.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee, through the Mortgage Servicer, has appointed the Substitute Trustee and requested the Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. The Substitute Trustee sold the property to Buyer, who was the highest bidder for cash at the public auction, for the amount of the sale in the manner prescribed by law. The sale was conducted no earlier than **1:00 PM**, as set forth in the Notice of Trustee's Sale and was concluded within three hours of such time. All matters, duties and obligations of the Mortgagee were legally performed.

Substitute Trustee, subject to any matters of record, and for the amount of sale paid by Buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor, Substitute Trustee hereby sell the above referenced property AS IS without any express or implied warranties, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §51.002 and §51.009.

*Affidavits of Posting/Filing and Notice of Sale are attached hereto marked as Exhibits "1" and "2" respectively and are by this reference incorporated herein for all purposes.*

EXECUTED this __9__ day of _April, 2012_.

_____
**Juanita Strickland**
Substitute Trustee(s)


**STATE OF TEXAS**

**COUNTY OF** __Bell__

Before me, the undersigned Notary Public, on this day personally appeared **Juanita Strickland** as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that (s)he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on this __9__ day of _April, 2012_.

THOMAS MCDOUGAL
Notary Public, State of Texas
My Commission Expires
April 28, 2015

_____
Notary Public, State of Texas


**RETURN TO:**
   **CODILIS & STAWIARSKI, PC**
   **650 North Sam Houston Parkway East, Suite 450**
   **Houston, Texas 77060**

Exhibit "1"

## AFFIDAVIT OF POSTING/FILING NOTICE OF SALE

STATE OF TEXAS

COUNTY OF TRAVIS

The undersigned, having knowledge of the matters hereinafter set forth, after being duly sworn, deposes and states under oath, as follows:

"On behalf of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust, dated June 22, 2001 executed by **Femi S. Onabajo and Christy Alfred Onabajo** to C.E. Harrison, Trustee(s) and recorded in the office of County Clerk in Volume , Page , Clerk's File No. 2001107916 of TRAVIS County, Texas; at least twenty-one (21) days preceding the date of the sale made by Juanita Strickland, Substitute Trustee on the 03 day of April 2012, between the hours of1:00 PM and04:00 PM;

(cxxxv)     Written notice of the proposed sale designating the County in which the property securing the above Deed of Trust will be sold, was posted ("Notice of Sale") at the courthouse door of each County in which the property securing the above Deed of Trust is located, or as otherwise designated by the County Commissioners; and

(cxxxvi)     A copy of said Notice of Sale was filed in the office of the County Clerk of the County in which the sale was made."

_____
Juanita Strickland, Substitute Trustee

SUBSCRIBED AND SWORN TO before me on this ___9___ day of April, 2012.

THOMAS MCDOUGAL
Notary Public, State of Texas
My Commission Expires
April 28, 2015

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS

COUNTY OF ___Bell___

This instrument was acknowledged before me on this ___7___ day of April, 2012 by Juanita Strickland.

THOMAS MCDOUGAL
Notary Public, State of Texas
My Commission Expires
April 28, 2015

_____
NOTARY PUBLIC, STATE OF TEXAS

C&S No. 44-10-5887



 HughesWattersAskanase

## NOTICE TO VACATE PREMISES
### (NO MONETARY RECOVERY SOUGHT)

May 3, 2012

Femi S. Onabajo
13107 Kirkglen Drive
Austin, TX 78727

*Certified Mail Return Receipt No. 7196 9008 9111 5247 6653
and First Class Mail, Postage Prepaid*

Re:    13107 Kirkglen Drive, Austin, TX 78727, more particularly described as LOT 2, BLOCK "D", OF SCOFIELD FARMS PHASE VII, SECTION 1, RESUBDIVISION OF THE AMENDED PLAT OF SCOFIELD FARMS PHASE 4, SECTION 4 A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OF PLAT, OF RECORD IN VOLUME 95, PAGES 223-225, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS ("Property").

Dear Femi S. Onabajo:

The undersigned represents HOUSEHOLD FINANCE CORP. III which acquired title to the Property at a non judicial foreclosure sale concluded on April 3, 2012.

Pursuant to Section 24.001 *et seq* of the Texas Property Code, notice is hereby given and demand is hereby made that you vacate the Property within three (3) days after delivery of this letter.

If you do not vacate the Property as demanded HOUSEHOLD FINANCE CORP. III has instructed that we institute a Forcible Detainer lawsuit against you to regain possession of the Property.

If you are presently on active duty in the Armed Services of the United States or have been discharged within nine (9) months prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately. You may have certain rights available to you under the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.)

We trust your timely compliance with these requests will avoid the necessity for further legal action.

If you have questions regarding this matter, do not hesitate to call me at (713) 759-0818.

Very truly yours,

HUGHES, WATTERS & ASKANASE, L.L.P

SSR:ash

Hughes Watters Askanase LLP, Attorneys at Law
Three Allen Center, 333 Clay, 29th Floor :: Houston, TX 77002
PHONE 713 759 0818 :: FAX 713 759 6834 :: INTERNET www.hwa.com

2291284:HSBC0388

109

No. C-1-CV-12-009421

| HOUSEHOLD FINANCE CORP. III, | § | IN THE COUNTY COURT |
| Plaintiff | § | |
| | § | |
| VS | § | AT LAW NUMBER 2 |
| | § | |
| FEMI S. ONABAJO and CHRISTY ALFRED | § | |
| ONABAJO, Defendants | § | TRAVIS COUNTY, TEXAS |

## JUDGMENT

Be it remembered that on the 13TH day of November, and on December 20, 2012, all parties appeared by counsel for trial of this case. After hearing the evidence and argument, the Court finds that Defendants should have judgment against the Plaintiff for possession of the premises at 13107 Kirkglen Drive, Austin, Travis County, Texas, and all costs of court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants do have and recover from Plaintiff possession of the premises at 13107 Kirkglen Drive, Austin, Travis County, Texas, and all costs of court herein expended. This is a final judgment disposing of all matters in controversy herein and is appealable. Appeal bond is set at $2,500.00 $500.00

Signed this the 20th day of December, 2012.

_____
J. David Phillips, Judge

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED JULY 18, 2013

### NO. 03-13-00086-CV

Household Finance Corp. III, Appellant

v.

Femi S. Onabajo and Christy Alfred Onabajo, Appellees

---

**APPEAL FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY**
**BEFORE JUSTICES PURYEAR, ROSE, AND GOODWIN**
**DISMISSED ON APPELLANT'S MOTION -- OPINION BY JUSTICE ROSE**

---

**THIS DAY** came to be submitted appellant's motion to dismiss the appeal in the above cause, and the Court having fully considered said motion is of the opinion that same should be granted. **IT IS THEREFORE** ordered that said motion is granted and that the appeal is dismissed. It is **FURTHER** ordered that the appellant pay all costs relating to this appeal, both in this Court and the court below, and that this decision be certified below for observance.

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00086-CV

Household Finance Corp. III, Appellant

v.

Femi S. Onabajo and Christy Alfred Onabajo, Appellees

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-12-009421, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellant Household Finance Corp. III has notified this Court that it no longer wishes to pursue its appeal and has filed a motion to dismiss. Appellees Femi S. Onabajo and Christy Alfred Onabajo have not objected or otherwise responded to the motion. We grant the motion and dismiss the appeal. *See* Tex. R. App. P. 42.1(a)(1).

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Dismissed on Appellant's Motion

Filed: July 18, 2013



**HUGHES, WATTERS & ASKANASE, LLP**
Three Allen Center
333 Clay Street, 29th Floor
Houston, Texas 77002
(713) 759-0818 / (713) 759-6834 (fax)

## NOTICE TO VACATE PREMISES
## (NO MONETARY RECOVERY SOUGHT)

October 8, 2014

FEMI S ONABAJO
13107 Kirkglen Drive
Austin, TX 78727

> RE: 13107 Kirkglen Drive, Austin, TX 78727, MORE PARTICULARLY DESCRIBED AS LOT 2, BLOCK "D", OF SCOFIELD FARMS PHASE VII, SECTION I RESUBDIVISION OF THE AMENDED PLAT OF SCOFIELD FARMS PHASE 4, SECTION 4 A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 95, PAGES 223-225, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS ("PREMISES")

Dear FEMI S ONABAJO:

The undersigned represents HOUSEHOLD FINANCE CORP. III which acquired title to the Property at a non judicial foreclosure sale concluded on April 3, 2012.

Pursuant to Section 24.001 *et seq* of the Texas Property Code, notice is hereby given and demand is hereby made that you vacate the Property within three (3) days after delivery of this letter.

If you do not vacate the Property as demanded HOUSEHOLD FINANCE CORP. III has instructed that we institute a Forcible Detainer lawsuit against you to regain possession of the Property.

If you are presently on active duty in the Armed Services of the United States or have been discharged within one (1) year prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately. You may have certain rights available to you under the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.).

We trust your timely compliance with these requests will avoid the necessity for further legal action.

If you have questions regarding this matter, do not hesitate to call me at (713) 759-0818.

Very truly yours,

HUGHES, WATTERS & ASKANASE, L.L.P

/smt:
VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN RECEIPT REQUESTED
9414 7266 9904 2017 1754 62

NTV 2014-025981smt

# HUGHES, WATTERS & ASKANASE, LLP
Three Allen Center
333 Clay Street, 29th Floor
Houston, Texas 77002
(713) 759-0818 / (713) 759-6834 (fax)


EXHIBIT
C

## NOTICE TO VACATE PREMISES
## (NO MONETARY RECOVERY SOUGHT)

October 8, 2014

CHRISTY ALFRED ONABAJO
13107 Kirkglen Drive
Austin, TX 78727

> RE: 13107 Kirkglen Drive, Austin, TX 78727, MORE PARTICULARLY DESCRIBED AS LOT 2, BLOCK "D", OF SCOFIELD FARMS PHASE VII, SECTION I RESUBDIVISION OF THE AMENDED PLAT OF SCOFIELD FARMS PHASE 4, SECTION 4 A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 95, PAGES 223-225, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS ("PREMISES")

Dear CHRISTY ALFRED ONABAJO:

The undersigned represents HOUSEHOLD FINANCE CORP. III which acquired title to the Property at a non judicial foreclosure sale concluded on April 3, 2012.

Pursuant to Section 24.001 *et seq* of the Texas Property Code, notice is hereby given and demand is hereby made that you vacate the Property within three (3) days after delivery of this letter.

If you do not vacate the Property as demanded HOUSEHOLD FINANCE CORP. III has instructed that we institute a Forcible Detainer lawsuit against you to regain possession of the Property.

If you are presently on active duty in the Armed Services of the United States or have been discharged within one (1) year prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately. You may have certain rights available to you under the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.).

We trust your timely compliance with these requests will avoid the necessity for further legal action.

If you have questions regarding this matter, do not hesitate to call me at (713) 759-0818.

Very truly yours,

HUGHES, WATTERS & ASKANASE, L.L.P

/smt:
VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN RECEIPT REQUESTED
9414 7266 9904 2017 1754 55

NTV 2014-025981smt

| | | |
|---|---|---|
| HOUSEHOLD FINANCE CORP. III | § | IN THE COUNTY COURT |
| Plaintiff | § | |
| | § | |
| V. | § | AT LAW NO. 1 |
| | § | |
| CHRISTY ALFRED ONABAJO AND | § | |
| FEMI S ONABAJO | § | |
| AND ALL OTHER OCCUPANTS | § | |
| Defendants | § | TRAVIS COUNTY, T E X A S |

## JUDGMENT

This March 31, 2015, came on to be heard the above entitled and numbered cause herein HOUSEHOLD FINANCE CORP. III, is Plaintiff, CHRISTY ALFRED ONABAJO AND FEMI S ONABAJO AND ALL OTHER OCCUPANTS are Defendants; when came the Plaintiff appeared and announced ready for trial. Defendants did appear. The Court, after considering the pleadings and fully hearing the sworn evidence finds for the Plaintiff.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Defendants are adjudged guilty of forcible detainer and that the Plaintiff, HOUSEHOLD FINANCE CORP. III does have and recover of the Defendants CHRISTY ALFRED ONABAJO AND FEMI S ONABAJO AND ALL OTHER OCCUPANTS, possession of the following described premises situated in the Justice of the Peace Court, Precinct 2, Place 1, TRAVIS County, Texas, to wit: 13107 Kirkglen Drive, Austin, TX 78727 more particularly described as:



> LOT 2, BLOCK "D", OF SCOFIELD FARMS PHASE VII, SECTION I RESUBDIVISION OF THE AMENDED PLAT OF SCOFIELD FARMS PHASE 4, SECTION 4 A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 95, PAGES 223-225, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a Writ of Possession issue on or after the sixth day after entry of this judgment, to the proper officer commanding him to seize possession of the said described premises and deliver same to the Plaintiff and that an

EV Judgments 2014-025981smt

execution issue for removal of all personal property left and/or abandoned by Defendants remaining on the property;

This judgment is final, disposes of all claims and parties, and is appealable.

Entered this 31 st day of March 2015.

THE HONORABLE PRESIDING JUDGE
COUNTY COURT AT LAW NO. 1


APPROVED & ENTRY REQUESTED:

HUGHES, WATTERS & ASKANASE, L.L.P

Sarah S. Robbins          TBA #24074966
Three Allen Center
333 Clay, 29th floor
Houston, Texas 77002
Telephone (713) 759-0818
Telecopier (713) 759-6834
ATTORNEYS FOR PLAINTIFF

99